U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

JUL 1 1 2008

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LUANA M. MARAVI, as a natural tutrix of her minor child, AARON B. SMITH | : | DOCKET NO. 2:05 CV 1917 |
| VS. | : | JUDGE MINALDI |
| UNITED STATES OF AMERICA | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a *Daubert* Motion in Limine to Limit the Report and Testimony of Robert D. Voogt, Ph.D, filed by the defendant, the United States of America, [doc. 36]. The plaintiff, Luana M. Maravi (hereinafter "Maravi"), on behalf of her minor child, Aaron B. Smith, filed an Opposition [doc. 38]. The United States filed a Reply [doc. 46]. The case is set for a bench trial starting on May 28, 2008.

## RULE 702

FED. R. EVID. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court granted the federal district courts with a gatekeeper function to exclude unreliable expert testimony from evidence. 509 U.S. 579, 589 (1993). The *Daubert* Court espoused a non-exclusive and non-dispositive checklist for

1

federal district courts to use when evaluating the reliability of expert testimony. *Id.* This gatekeeping function applies to all expert testimony, regardless of the field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial judges have "considerable leeway in...determining whether particular expert testimony is reliable." *Id.* at 155. "Both the determination of reliability and the factors taken in to account are left to the discretion of the district court consistent with its gatekeeping function" under FED. R. EVID. 702. *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000).

In the context of a bench trial, "'the *Daubert* gatekeeping obligation is less pressing' because the gatekeeper and the trier of fact are the same." *Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *2 (E.D. La. 4/29/08) (quoting *Volk v. United States*, 57 F. Supp.2d 888, 896 n.5 (N.D. Cal. 1999)). The Fifth Circuit has also noted that *Daubert*'s safeguards are not as critical in a bench trial. *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). In bench trials, it is preferable to admit "shaky but admissible evidence and permit vigorous cross-examination, presentation of contrary evidence, and careful weighing of the burden of proof to test" such evidence. *Johnson*, 2008 WL 1930681 at *2 (citing *Fierro v. Gomez*, 865 F. Supp. 1387, 1395 n.7 (N.D. Cal. 1994); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp.2d 1011, 1042 (N.D. Ill. 2003)).

## ANALYSIS

Maravi brings suit against the United States pursuant to the Federal Tort Claims Act for injuries Aaron sustained at the Fort Polk Army Base pool. Maravi retained Dr. Voogt to prepare a life care plan for Aaron.[1] Dr. Voogt is "engaged in rehabilitation, in long-term care planning

---

[1] Def.'s Mem. in Support of Motion in Limine and/or *Daubert* Motion, at 1 [doc. 36].

for people with disabilities."[2] Dr. Voogt holds a master's degree in vocational rehabilitation counseling and is a licensed vocational rehabilitation counselor in Louisiana and Virginia.[3] Dr. Voogt was certified as an expert in this field in all but one out of 300 appearances.[4] The United States does not object to Dr. Voogt's certification as an expert, but seeks to limit Dr. Voogt's testimony. Specifically, the United States moves to exclude Dr. Voogt's recommendations for pediatrics and internal medicine,[5] pulmonology, gastroenterology, an Ear, Nose, and Throat (hereinafter "ENT") physician, a personal care attendant and educational consultant services because the United States argues these recommendations are not based in sufficient facts or data.[6]

This Court shall admit Dr. Voogt's inclusion of various services into Aaron's life plan so

---

[2] Def.'s Ex. A, p. 5 (Dr. Voogt Dep.)

[3] *Id.* at 5-6.

[4] *Id.* at 14.

[5] The plaintiff concedes that the costs associated with this care should be excluded from the life care plan. Pl.'s Mem. in Opp. to Def.'s Motion in Limine and/or *Daubert* Motion, at 8 [doc. 38]. Accordingly, testimony on pediatrics and internal medicine costs are excluded.

[6] The United States relies heavily on *Norwest Bank v. Kmart Corp.*, 1997 WL 33479072 (N.D. Ill. 1/29/97), an unpublished opinion from the Northern District of Illinois that excluded Dr. Voogt's testimony. The *Norwest* court excluded Dr. Voogt's testimony because the court found that a jury would be unable to distinguish between his opinions for the plaintiff in terms of a "forecast" rather than a "prognosis," and because Dr. Voogt apparently based his life care plan on medical opinions based on his own experience, rather than the opinions of medical professionals. Thus, the *Norwest* court found that Dr. Voogt's opinions had no foundation.

This Court finds that *Norwest* has little precedential value, both because it is an unpublished case outside of this Circuit and because it is factually distinguishable. The *Daubert* motion in *Norwest* was raised in the context of a jury trial, whereas this motion arises in the less stringent context of a bench trial. Furthermore, as discussed *infra*, this Court finds that Dr. Voogt's testimony has a medical foundation in the record. Thus, after considering the defendant's arguments on *Norwest* and reviewing the record, this Court is unpersuaded.

long as they are based on sufficient facts or data in the record. Merely admitting evidence does not mean this Court has accepted such evidence as fact. Under the *Daubert* guidelines for bench trials, it is preferable to admit "shaky but admissible evidence and permit vigorous cross-examination, presentation of contrary evidence, and careful weighing of the burden of proof" to test such evidence. *See Johnson*, 2008 WL 1930681 at *2.

### A.) Pulmonology

The United States seeks to exclude Dr. Voogt's life care plan as it pertains to pulmonology care because Aaron's last visit to a pulmonologist was in 2005 and Dr. Voogt testified he was unaware of any medical referral to pulmonology.[7] Thus, the United States argues that there is no medical basis for Dr. Voogt's recommendation of a pulmonologist. Maravi opposes this request because Dr. Daniel Tolson, Aaron's pediatrician for more than two years, stated that Aaron would require the services of a pulmonologist on a bi-annual basis to treat his asthma.[8] Accordingly, this Court finds that Dr. Voogt has a sufficient medical basis for including bi-annual visits to a pulmonologist in Aaron's life care plan.

### B.) Gastroenterology

The United States seeks to exclude Dr. Voogt's life care plan as it pertains to the services of a gastroenterologist because it argues Dr. Voogt recommended the services of a gastroenterologist without knowing if any of Aaron's current doctors have referred him to a gastroenterologist.[9] Thus, the United States argues that there is no medical basis for Dr. Voogt's

---

[7] Def.'s Ex. A, pp. 43-44 (Dr. Voogt Dep.)

[8] Pl.'s Ex. 1, pp. 2-3. Dr. Tolson stated that Aaron has mild persistent asthma. *Id.* at 3.

[9] Def.'s Ex. A, p. 47 (Dr. Voogt Dep.)

4

recommendation of a gastroenterologist. The plaintiff argues that there are strong medical reasons for Dr. Voogt's inclusion of a gastroenterologist in the life care plan. Aaron suffers from stomach pain, acid reflux, and esophageal reflux, and has had several documented medical visits for stomach ailments.[10]

This Court's own review of the medical records revealed that Dr. Tolson referred Aaron to a gastroenterologist on December 6, 2006 and again on February 7, 2007.[11] It appears that by March 20, 2007, Aaron saw a gastroenterologist.[12] Accordingly, this Court finds that Dr. Voogt had a medical basis for including visits to a gastroenterologist in Aaron's life care plan.

### C.) ENT

The United States argues that there is no medical basis for Dr. Voogt's recommendation of an ENT physician because Dr. Voogt recommended the services of an ENT without knowing if Aaron had a current medical referral for an ENT.[13] Maravi argues that Aaron's medical records are replete with the problems Aaron has with excess saliva, swallowing, drooling, all of which she argues an ENT would ordinarily treat.[14] Although Aaron's records do address his problems with excess saliva, the plaintiff did not cite, nor did this Court find, any referral to an ENT or a medical basis for the opinion that an ENT may be needed for Aaron; accordingly, the

---

[10] *See* Pl.'s Ex. 5.

[11] *Id.*

[12] *Id.*

[13] Def.'s Ex. A, p. 44-46 (Dr. Voogt Dep.)

[14] Aaron's medical records contain statements like "continues with trouble with saliva." Pl.'s Ex. 5.

5

Court finds that there is no factual basis for Dr. Voogt's recommendation of an ENT.

### D.) Personal Care Attendant

The United States argues that there is no medical basis for Dr. Voogt's recommendation of a 24-hour personal care attendant for life because Dr. Voogt recommended the services of a round-the-clock attendant without a medical basis. Maravi argues that Dr. Voogt recommended 24-hour care based upon Dr. Harvey Jacobs' recommendations for treatment. Dr. Jacobs recommended treatment in a comprehensive residential adolescent brain injury program to address Aaron's behavioral and emotional challenges, which he estimated would take two to four years, followed by a home and school transition program.[15] Dr. Jacobs stated that "determination of long-term community based living support as an adult" could range from ten hours per week to 24-hour supervision, depending on Aaron's response to the treatment.[16] Accordingly, this Court finds that Dr. Voogt has a medical basis for including 24-hour supervision in Aaron's life care plan.

### E.) Educational Consultant Services

The United States argues that Dr. Voogt recommended the services of an educational consultant when Aaron is a good student who receives As without knowing what services Aaron currently receives, and without knowing whether his current school meets those needs. Maravi argues that Dr. Jacobs recommended that Aaron receive forty hours annually of treatment from an educational consultant with specific experience in brain injury to coordinate school

---

[15] Pl.'s Ex. 6. Dr. Jacobs is a licensed clinical psychologist and behavior analyst. *Id.* His report was prepared November 17, 2007 based on a review of several school and medical records, as well as an initial meeting, home visit, and the child behavior checklist. *Id.*

[16] *Id.*

curriculum and services throughout his academic career.[17] Dr. Tolson also stated he expected Aaron to have some difficulty with school, especially as the subject matter becomes more difficult.[18]

Moreover, although Dr. Voogt did testify that he does not know what services Aaron receives at his current school, Dr. Voogt's recommendation for educational consultant services was based on Dr. Jacobs' assessment, which was prepared November 17, 2007. Thus, this Court finds that Dr. Voogt's inclusion of forty hours annually with an educational consultant has a sufficient factual basis, given that Dr. Jacobs made the recommendation after reviewing school and medical records, and meeting with Aaron.

## CONCLUSION

Mindful that this Court will serve as both gatekeeper and factfinder, this Court shall admit much of Dr. Voogt's testimony and will rely on the adversarial process to test such testimony; accordingly,

IT IS ORDERED that the defendant's *Daubert* Motion in Limine to Limit the Report and Testimony of Robert D. Voogt, Ph.D [doc. 36] is hereby GRANTED in part and DENIED in part. The Motion is GRANTED insofar as Dr. Voogt's inclusion of pediatrics, internal medicine, and ENT services in Aaron's life care plan are EXCLUDED. The Motion is DENIED insofar as Dr. Voogt's inclusion of pulmonology, gastroenterology, a personal care attendant, and educational consultant services in Aaron's life care plan are ADMISSIBLE.

---

[17] *Id.* at 11.

[18] Pl.'s Ex. 1, at 3.

7

curriculum and services throughout his academic career.[17] Dr. Tolson also stated he expected Aaron to have some difficulty with school, especially as the subject matter becomes more difficult.[18]

Moreover, although Dr. Voogt did testify that he does not know what services Aaron receives at his current school, Dr. Voogt's recommendation for educational consultant services was based on Dr. Jacobs' assessment, which was prepared November 17, 2007. Thus, this Court finds that Dr. Voogt's inclusion of forty hours annually with an educational consultant has a sufficient factual basis, given that Dr. Jacobs made the recommendation after reviewing school and medical records, and meeting with Aaron.

## CONCLUSION

Mindful that this Court will serve as both gatekeeper and factfinder, this Court shall admit much of Dr. Voogt's testimony and will rely on the adversarial process to test such testimony; accordingly,

IT IS ORDERED that the defendant's *Daubert* Motion in Limine to Limit the Report and Testimony of Robert D. Voogt, Ph.D [doc. 36] is hereby GRANTED in part and DENIED in part. The Motion is GRANTED insofar as Dr. Voogt's inclusion of pediatrics, internal medicine, and ENT services in Aaron's life care plan are EXCLUDED. The Motion is DENIED insofar as Dr. Voogt's inclusion of pulmonology, gastroenterology, a personal care attendant, and

---

[17] *Id.* at 11.

[18] Pl.'s Ex. 1, at 3.

educational consultant services in Aaron's life care plan are ADMISSIBLE.

Lake Charles, Louisiana, this __11__ day of July, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE